## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| **RICHARD MCCLUSKEY**, | : | |
| on behalf of himself and all others | : | |
| similarly situated, | : | **Case No**. |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | DEMAND FOR JURY TRIAL |
| | : | |
| **ARBITERSPORTS, LLC,** | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

## CLASS ACTION COMPLAINT

Plaintiff RICHARD MCCLUSKEY, on behalf of himself and all others similarly situated, brings this action against Defendant ArbiterSports, LLC ("ArbiterSports" or "Defendant") to obtain damages, restitution, and injunctive relief for the Class, as defined below, from the Defendant. Plaintiff makes the following allegations upon information and belief, except as to his own actions, the investigation of his counsel, and the facts that are a matter of public record.

## NATURE OF THE ACTION

1.     This class action arises out of the recent cyberattack and data breach involving Defendant ArbiterSports (the "Data Breach"), which held in its possession certain personally identifiable information ("PII") of the Plaintiff, and the putative Class Members, all of whom have PII on ArbiterSports servers.

2.     The PII compromised in the Data Breach included highly-sensitive information including first and last names, addresses, dates of birth, username, passwords, Social Security numbers, full bank account numbers, and payroll and withholding information.

3.      The Data Breach was a direct result of Defendant's failure to implement adequate and reasonable cybersecurity procedures and protocols necessary to protect consumers' PII.

4.      Plaintiff brings this class action lawsuit on behalf of those similarly situated to address Defendant's inadequate safeguarding of Class Members' PII that it collected and maintained, and for failing to provide timely and adequate notice to Plaintiff and other Class Members that their information had been subject to the unauthorized access of an unknown third party and precisely what specific type of information was accessed.

5.      In addition, Defendant ArbiterSports and its employees failed to properly monitor and secure the computer network and systems that housed the PII. Had ArbiterSports properly monitored its property, it would have discovered the intrusion sooner.

6.      Defendant maintained the PII in a reckless manner. In particular, the PII was maintained on Defendant ArbiterSports's computer network in a condition vulnerable to cyberattacks. Upon information and belief, the mechanism of the cyberattack and potential for improper disclosure of Plaintiff's and Class Members' PII was a known risk to Defendant and thus Defendant was on notice that failing to take steps necessary to secure the PII from those risks left that property in a dangerous condition.

7.      Defendant disregarded the rights of Plaintiff and Class Members (defined below) by, *inter alia*, intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure its data systems were protected against unauthorized intrusions; failing to disclose that it did not have adequately robust computer systems and security practices to safeguard Class Member PII; and failing to take standard and reasonably available steps to prevent the Data Breach.

8.     Plaintiff's and Class Members' identities are now at risk because of Defendant's negligent conduct since the PII that Defendant collected and maintained is now in the hands of data thieves.

9.     Armed with the PII accessed in the Data Breach, data thieves can commit a variety of crimes including, *e.g.*, opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' information, obtaining driver's licenses in Class Members' names but with another person's photograph, and giving false information to police during an arrest.

10.    As a result of the Data Breach, Plaintiff and Class Members have been exposed to a heightened and imminent risk of fraud and identity theft. Plaintiff and Class Members must now and in the future closely monitor their financial accounts to guard against identity theft.

11.    Plaintiff and Class Members may also incur out of pocket costs for, *e.g.*, purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

12.    Through this Complaint, Plaintiff seeks to remedy these harms on behalf of himself and all similarly situated individuals whose PII was accessed during the Data Breach.

13.    Plaintiff seeks remedies including, but not limited to, compensatory damages, reimbursement of out-of-pocket costs, and injunctive relief including improvements to Defendant's data security systems, future annual audits, and adequate credit monitoring services funded by Defendant.

14.    Accordingly, Plaintiff brings this action against Defendant seeking redress for its unlawful conduct, and asserting claims for: (i) negligence, (ii) breach of express contract, (iii)

breach of implied contract; (iv) intrusion upon seclusion/invasion of privacy; and (v) breach of confidence.

## JURISDICTION AND VENUE

15.    This Court has jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). There are more than 100 members of the proposed class, the aggregated claims of the individual Class Members exceed the sum or value of $5,000,000.00 exclusive of interest and costs, and members of the Proposed Class, including Plaintiff, are citizens of states different from Defendant ArbiterSports.

16.    Defendant ArbiterSports is a Utah limited liability company with its corporation with its principal place of business in Salt Lake County, Utah. The National Collegiate Athletic Association ("NCAA") is a member of ArbiterSports with a majority membership interest. The NCAA is an unincorporated association that is headquartered in Indianapolis, Indiana.

17.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1). Defendant resides in this District for jurisdictional and venue purposes because a member of ArbiterSports is headquartered in this District.

## PARTIES

18.    Plaintiff  Richard McCluskey ("McCluskey") is and at all times mentioned herein was as individual citizen of the State of Florida, residing in the city of Brooksville. Plaintiff McCluskey received notice of the Data Breach from ArbiterSports on or about August 25, 2020. A copy of the notice he received is attached hereto as Exhibit A (the "Notice Letter").

19.    Defendant ArbiterSports is a Utah limited liability company with its principal place of business at 235 W. Sego Lily Drive, Suite 200, Sandy, Salt Lake County, Utah 84070. ArbiterSports is majority owned by the NCAA, which is headquartered in Indianapolis.

## STATEMENT OF FACTS

**A.    Nature of Defendant's Businesses**

20.    Defendant ArbiterSports is a technology company that provides tools related to management of youth sports.

21.    In the ordinary course of his role as a referee of high school football games for the Florida High School Athletic Association, which in turn used ArbiterSports to assign him to games and manage payroll, Plaintiff provided PII to Defendant, including his name, address, date of birth, bank account information, username, password, email address, and Social Security number.

22.    In the ordinary course of their relationship ArbiterSports, Class members, who are also youth sports coaches and referees of organizations that use management services provided by ArbiterSports, provided and were required to provide PII to ArbiterSports including their names, addresses, dates of birth, username, passwords, email addresses, sand Social Security numbers.

23.    Defendant ArbiterSports maintains this PII on its servers and within its data infrastructure.

24.    Defendant ArbiterSports has established a Privacy Policy wherein it details the PII it collects through its website and its standards to maintain the security and integrity of such data.[1]

25.    The aim of the Privacy Policy is to provide adequate and consistent safeguards for the handling of employment data by Defendant ArbiterSports.

26.    Defendant ArbiterSports agreed to and undertook legal duties to maintain the PII entrusted to them by Plaintiff and Class Members safely, confidentially, and in compliance with all applicable laws.

---

[1]  http://www.arbitersports.com/privacy-policy/ (last visited September 25, 2020).

27.    Defendant ArbiterSports held the PII it collected on computer servers at a currently unknown location.[2]

28.    The PII held by Defendant ArbiterSports in its computer systems and networks included the PII of Plaintiff and Class Members.

**B.    The Data Breach**

29.    On June 3, 2020, Defendant ArbiterSports was hacked and PII was held for ransom by the hackers. The hackers obtained PII from Plaintiff and the Class Members.

30. Defendant ArbiterSports alleges that it did not learn of the data breach until July 15, 2020. It claims to have launched an investigation and engaged a security firm. The investigation revealed that a copy of a database containing PII was obtained by the hackers and the hackers demanded payment in exchange for allegedly deleting the files. ArbiterSports paid the ransom and claims that it "obtained confirmation that the unauthorized party deleted the files," although as discussed below, it is unlikely that the hackers did so or that the information is no longer available in the dark web.

31.    The data and files exfiltrated from Defendant ArbiterSports's computer servers included the PII of Plaintiff and Class Members, including full names, addresses, dates of birth, passwords, usernames, and Social Security numbers.

32.    On or about August 25, 2020 (nearly three months after the breach occurred), Defendant ArbiterSports notified Plaintiff of the Data Breach. However, Defendant ArbiterSports only provided notice of the Data Breach to individuals located in states where state law required such disclosure.

---

[2] *See* Ex. A, Notice Letter.

33.     Defendant ArbiterSports notified the Indiana Attorney General of the breach and disclosed that 539,309 individuals were affected by the breach.[3]

34.     As a result of Defendant ArbiterSports's disclosures, Defendant ArbiterSports decided to offer of one (1) year of identity monitoring without cost to those who received the notice, including Plaintiff McCluskey.

**C.      ArbiterSports's Privacy Policy**

35.     Defendant ArbiterSports had an obligation created by contract, industry standards, common law, and representations made to Class Members, to keep Plaintiff's and Class Members' PII confidential and to protect it from unauthorized access and disclosure.

36.     Plaintiff and Class Members provided their PII to Defendant ArbiterSports with the reasonable expectation and mutual understanding that Defendant ArbiterSports would comply with its obligations to keep such information confidential and secure from unauthorized access.

37.     Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in the last few years.

38.     Indeed, cyberattacks, such as the one experienced by Defendant, have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service have issued a warning to potential targets so they are aware of, and prepared for, a potential attack.

39.     Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public.

40.     Defendant breached its obligations to Plaintiff and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer

---

[3] https://www.in.gov/attorneygeneral/files/data%20breach%20sept2020.pdf (last visited Sept. 25, 2020).

systems and data infrastructure. Defendant's unlawful conduct includes, but is not limited to, its failure to:

 a. maintain an adequate data security system to reduce the risk of data breaches and cyberattacks;

 b. adequately protect employees' PII;

 c. properly monitor its own data security systems for existing intrusions; and

 d. ensure that vendors with access to payroll data employed reasonable security procedures;

41. As the result of computer systems in need of security upgrading, failure to implement proper cybersecurity hardware and software (such as next generation firewalls and multi-factor authentication), inadequate procedures for handling phishing emails, and inadequately trained employees, Defendant negligently and unlawfully failed to safeguard Plaintiff's and Class Members' PII.

42. Indeed, as detailed by computer programmer (and victim of Defendant's conduct) Keith Mukai in an article for Medium[4], "ArbiterSports' security measures failed to adhere to the most basic security best practices established 30+ years ago."

43. Mr. Mukai, a 20-year professional programmer with a computer science degree from Princeton, details how ArbiterSports kept passwords as decryptable data, instead of "hashing" the data, which would transform the passwords into nonsense letters and numbers. Had ArbiterSports done that, it would be mathematically impossible for the hackers to decrypt.

---

[4] *See* Keith Mukai, *ArbiterSports was hacked. Don't use them ever again*, Medium (Aug. 29, 2020), https://medium.com/@kdmukai_64726/arbitersports-was-hacked-dont-use-them-ever-again-fddea92bcd21

"[B]ecause the attackers *were* able to decrypt the password data, that tells us that ArbiterSports could not have been using hashing to protect user passwords."[5]

44.     Hashing is 1970s era technology that has been in mainstream use since the 1990s.

45.     Further, ArbiterSports encrypted Social Security numbers on its servers—which must be decrypted using an encryption key—in a manner subject to decryption with ease.

46.     The industry standard encryption algorithm is called AES-256. It is the same encryption used by the National Security Agency. AES-256 relies on an encryption key that must be kept secret.

47.     The fact that the hackers were able to decrypt the Social Security numbers means either: (1) ArbiterSports was not using industry standard encryption and left themselves vulnerable to attack; or (2) ArbiterSports was using AES-256 but did not adequately secure the encryption key.

48.     Either option demonstrates that ArbiterSports's data security was handled incompetently and negligently.

49.     Further, ArbiterSports's claim that it has verified that the hackers deleted the PII is preposterous.

50.     As Keith Mukai states in his article about ArbiterSports, "Proof of deletion is not a thing."[5]

51.     There is simply no way ArbiterSports could possibly know that the hackers did not simply copy the data in another location before offering whatever "proof" that the original copy was deleted. That ArbiterSports has put its trust in the very people responsible for the Data Breach in the first place is a disaster in waiting.

---

[5] *Id.*

52.     Due to ArbiterSports's incompetent security measures, Plaintiff and the Class Members now face an increased risk of fraud and identity theft and must deal with that threat forever.

**D.     Data Breaches Cause Disruption and Put Consumers at an Increased Risk of Fraud and Identify Theft**

53.     The United States Government Accountability Office released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[6]

54.     The FTC recommends that identity theft victims take several steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for seven years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[7]

55.     Identity thieves use stolen personal information such as Social Security numbers for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.

56.     Identity thieves can also use Social Security numbers to obtain a driver's license or official identification card in the victim's name but with the thief's picture; use the victim's name and Social Security number to obtain government benefits; or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's Social Security number, rent a house or receive medical services in the victim's name, and may even give

---

[6] *See* U.S. Gov't Accountability Off., GAO-07-737, *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown* 2 (2007), https://www.gao.gov/new.items/d07737.pdf ("GAO Report").
[7] *See* https://www.identitytheft.gov/Steps (last visited July 12, 2020).

the victim's personal information to police during an arrest resulting in an arrest warrant being issued in the victim's name. A study by Identity Theft Resource Center shows the multitude of harms caused by fraudulent use of personal and financial information:[8]



57.    What's more, theft of PII is also gravely serious. PII is a valuable property right.[9] Its value is axiomatic, considering the value of Big Data in corporate America and the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond doubt that PII has considerable market value.

---

[8]  Jason Steele, *Credit Card and ID Theft Statistics*, Creditcards.com (Oct. 24, 2017), https://www.creditcards.com/credit-card-news/credit-card-security-id-theft-fraud-statistics_1276.php (last visited July 12, 2020).
[9] *See, e.g.,* John T. Som, et al, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

58.     It must also be noted there may be a substantial time lag—measured in years—between when harm occurs versus when it is discovered, and also between when PII and/or financial information is stolen and when it is used. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

*See* GAO Report, at p. 29.

59.     PII and financial information are such valuable commodities to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for years.

60.     There is a market for Plaintiff's and Class Members PII, and the stolen PII has inherent value.

61.     That ArbiterSports has not even notified all of the Class Members who were affected is outrageous. There is no notice of the breach on ArbiterSports's website or Twitter account. ArbiterSports's Facebook page also did not disclose the breach. Instead, it posted on July 13, 2020, that the ArbiterSports's website was experiencing "an unplanned outage."

62.     Plaintiff and Class Members are at an increased risk of fraud and identity theft for many years into the future. Thus, Plaintiff and Class Members must vigilantly monitor their financial accounts for many years to come.

## PLAINTIFF'S AND CLASS MEMBERS' DAMAGES

63.     As a consequence of the Data Breach, Plaintiff McClusky has spent time monitoring his accounts to protect against fraud. He has checked his credit report carefully and

must continue to do so for the foreseeable future. He performed a scan of the dark web and his email address and phone number are described as compromised. Further, since the Data Breach, he has received an increased number of phone calls to his cell phone attempting to scam him out of money.

64.    To date, Defendant has done absolutely nothing to compensate Class Members for the damages they sustained in the Data Breach. Defendant has merely offered to provide identity monitoring services for a paltry twelve (12) months by way of Experian's IdentityWorksSM Credit 3B.

65.    Defendant's offer is wholly inadequate as it fails to provide for the fact that victims of data breaches and other unauthorized disclosures commonly face multiple years of ongoing identity theft and it entirely fails to provide any compensation for the unauthorized release and disclosure of Plaintiff's and Class Members' PII.

66.     Furthermore, Defendant ArbiterSports's credit monitoring offer squarely places the burden on Plaintiff and Class Members, rather than on the Defendant, to investigate and protect themselves from Defendant's tortious acts resulting in the Data Breach. Rather than automatically enrolling Plaintiff and Class Members in credit monitoring services upon discovery of the breach, Defendant merely sent instructions to Plaintiff and Class Members about actions they can affirmatively take to protect themselves.

67.    Plaintiff and Class Members have been damaged by the compromise and exfiltration of their PII in the Data Breach.

68.    Plaintiff's PII was compromised and exfiltrated by cyber criminals as a direct and proximate result of the Data Breach.

69.     As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have been placed at an imminent, immediate, and continuing increased risk of harm from fraud and identity theft.

70.     As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have been forced to expend time dealing with the effects of the Data Breach.

71.     Plaintiff and Class Members face substantial risk of out-of-pocket fraud losses such as loans opened in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft. These dangers are not merely hypothetical, they are exactly why data breaches happen in the first place. Cyber criminals steal this information in order to turn it into monetary gain for themselves at the expense of the Class Members because they know how valuable this information is.

72.     Plaintiff and Class Members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their PII as potential fraudsters could use that information to more effectively target such schemes to Plaintiff and Class Members.

73.     Plaintiff and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

74.     Plaintiff and Class Members also suffered a loss of value of their PII when it was acquired by cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in related cases.

75.     Plaintiff and Class Members have spent and will continue to spend significant amounts of time to monitor their financial accounts and records for misuse.

76.     Plaintiff and Class Members have suffered or will suffer actual injury as a direct result of the Data Breach. Many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach relating to:

a.      finding fraudulent charges;

b.      canceling and reissuing credit and debit cards;

c.      purchasing credit monitoring and identity theft prevention;

d.      addressing their inability to withdraw funds linked to compromised accounts;

e.      taking trips to banks and waiting in line to obtain funds held in limited accounts;

f.      placing "freezes" and "alerts" with credit reporting agencies;

g.      spending time on the phone with or at a financial institution to dispute fraudulent charges;

h.      contacting financial institutions and closing or modifying financial accounts;

i.      resetting automatic billing and payment instructions from compromised credit and debit cards to new ones;

j.      paying late fees and declined payment fees imposed as a result of failed automatic payments that were tied to compromised cards that had to be cancelled; and

k.      reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

77.     Moreover, Plaintiff and Class Members have an interest in ensuring that their PII, which is believed to remain in the possession of the Defendant, is protected from further breaches by the implementation of security measures and safeguards, including but not limited to, making

sure that the storage of data or documents containing personal and financial information is not accessible online and that access to such data is password-protected.

78.     Further, as a result of Defendant's conduct, Plaintiff and Class Members are forced to live with the anxiety that their PII may be disclosed to the entire world, thereby subjecting them to embarrassment and depriving them of any right to privacy whatsoever.

79.     As a direct and proximate result of Defendant's actions and inactions, Plaintiff and Class Members have suffered anxiety, emotional distress, and loss of privacy, and are at an increased risk of future harm.

80.     Defendant's delay in identifying and reporting the Data Breach caused additional harm. It is axiomatic that "[t]he quicker a financial institution, credit card issuer, wireless carrier or other service provider is notified that fraud has occurred on an account, the sooner these organizations can act to limit the damage. Early notification can also help limit the liability of a victim in some cases, as well as allow more time for law enforcement to catch the fraudsters in the act."[10]

81.     Indeed, once a Data Breach has occurred, "[o]ne thing that does matter is hearing about a Data Breach quickly. That alerts consumers to keep a tight watch on credit card bills and suspicious emails. It can prompt them to change passwords and freeze credit reports. And notifying officials can help them catch cyber criminals and warn other businesses of emerging dangers. If

---

[10] *Identity Fraud Hits Record High with 15.4 Million U.S. Victims in 2016, Up 16 Percent According to New Javelin Strategy & Research Study*, Business Wire, https://www.businesswire.com/news/home/20170201005166/en/Identity-Fraud-Hits-Record-High-15.4-Million

consumers don't know about a breach because it wasn't reported, they can't take action to protect themselves."[11]

82.     Here, more than a month passed between the breach and Defendant reacting to it, and then another month passed before Defendant informed only *some* of the Class Members. Defendant's conduct is inexcusable.

## CLASS ACTION ALLEGATIONS

83.     Plaintiff brings this action on behalf of himself and on behalf of all other persons similarly situated (the "Class") pursuant to Rule 23(b)(2), (b)(3) and (c)(4) of the Federal Rules of Civil Procedure.

84.     Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> All persons whose PII was compromised in the Data Breach disclosed by ArbiterSports on or about August 25, 2020 (the "Class").

85.     Plaintiff proposes the following Subclass definition, subject to amendment as appropriate:

> All persons in the State of Florida whose PII was compromised in the Data Breach disclosed by ArbiterSports on or about August 25, 2020 (the "Subclass").

86.     Excluded from the Class are Defendant's officers and directors, and any entity in which Defendant has a controlling interest; and the affiliates, legal representatives, attorneys,

---

[11] Allen St. John, *Consumer Reports, The Data Breach Next Door: Security breaches don't just hit giants like Equifax and Marriott. Breaches at small companies put consumers at risk, too* (Jan. 31, 2019), https://www.consumerreports.org/data-theft/the-data-breach-next-door/ (internal citations omitted).

successors, heirs, and assigns of Defendant. Excluded also from the Class are Members of the judiciary to whom this case is assigned, their families and Members of their staff.

87.     Plaintiff hereby reserves the right to amend or modify the class definitions with greater specificity or division after having had an opportunity to conduct discovery. The proposed Class meets the criteria for certification under Rule 23(a), 23(b)(2), 23(b)(3), and 23(c)(4).

88.     <u>Numerosity</u>. The Members of the Class are so numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time, based on information and belief, the Class consists of approximately no less than 500,000 consumers whose data was compromised in the Data Breach.

89.     <u>Commonality</u>. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common question of law and fact include, without limitation:

a.      Whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiff's and Class Members' PII;

b.      Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c.      Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

d.      Whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

e.      Whether Defendant owed a duty to Class Members to safeguard their PII;

f.      Whether Defendant breached its duty to Class Members to safeguard their PII;

g.      Whether computer hackers obtained Class Members' PII in the Data Breach;

h.      Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

i.      Whether Plaintiff and Class Members suffered legally cognizable damages as a result of Defendant's misconduct;

j.      Whether Defendant's conduct was negligent;

k.      Whether Defendant's acts, inactions, and practices complained of herein amount to acts of intrusion upon seclusion under the law;

l.      Whether Defendant failed to provide notice of the Data Breach in a timely manner; and

m.      Whether Plaintiff and Class Members are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

90.    <u>Typicality</u>. Plaintiff's claims are typical of those of other Class Members because Plaintiff's PII, like that of every other Class Member, was compromised in the Data Breach.

91.    <u>Adequacy of Representation</u>. Plaintiff will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiff's Counsel are competent and experienced in litigating class actions, including data privacy litigation of this kind.

92.    <u>Predominance</u>. Defendant has engaged in a common course of conduct toward Plaintiff and Class Members, in that all the Plaintiff's and Class Members' data was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

93.    <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

94.    Defendant has acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

95.    Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a.    Whether Defendant owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their PII;

b.    Whether Defendant's security measures to protect its data systems were reasonable in light of best practices recommended by data security experts;

c.    Whether Defendant's failure to institute adequate protective security measures amounted to negligence;

d.      Whether Defendant failed to take commercially reasonable steps to safeguard consumer PII; and

e.      Whether adherence to FTC data security recommendations, and measures recommended by data security experts would have reasonably prevented the Data Breach.

96.      Finally, all members of the proposed Class are readily ascertainable. Defendant has access to Class Members' names and addresses affected by the Data Breach. At least some Class Members have already been preliminarily identified and sent notice of the Data Breach by Defendant.

## CAUSES OF ACTION

### FIRST COUNT
### Negligence
**(On behalf of Plaintiff and all Class Members against Defendant ArbiterSports, or in the alternative, on behalf of Plaintiff and all Subclass Members against Defendant ArbiterSports)**

97.      Plaintiff re-alleges and incorporates by reference all paragraphs above as if fully set forth herein.

98.      Plaintiff and Class Members were required to submit PII to ArbiterSports in order to receive payment.

99.      By collecting and storing this data in ArbiterSports's computer property, ArbiterSports had a duty of care to use reasonable means to secure and safeguard its computer property—and Class Members' PII held within it—to prevent disclosure of the information, and to safeguard the information from theft.  Defendant ArbiterSports's duty included a responsibility to implement processes by which it could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

100.    Defendant ArbiterSports owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the PII.

101.    Defendant ArbiterSports had duty of care to use reasonable security measures because it was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a data breach.

102.    Defendant ArbiterSports's duty to use reasonable care in protecting confidential data also arose also because it is bound by industry standards to protect confidential PII.

103.    Defendant ArbiterSports breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class Members' PII. The specific negligent acts and omissions committed by Defendant ArbiterSports include, but are not limited to, the following:

a.    Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' PII;

b.    Failing to adequately monitor the security of its networks and systems;

c.    Failure to periodically ensure that its computer system had processes in place to maintain reasonable data security safeguards;

d.    Allowing unauthorized access to Class Members' PII;

e.    Failing to detect in a timely manner that Class Members' PII had been compromised; and

f.    Failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

104.    It was foreseeable that Defendant's failure to use reasonable measures to protect Class Members' PII would result in injury to Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in the financial services industry.

105.    It was therefore foreseeable that the failure to adequately safeguard Class Members' PII would result in one or more types of injuries to Class Members.

106.    Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

107.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

**SECOND COUNT**
**Breach of Contract**
**(On Behalf of Plaintiff and Class Members against Defendant ArbiterSports,**
**or in the alternative, on behalf of Plaintiff and all Subclass Members against Defendant**
**ArbiterSports)**

108.    Plaintiff re-alleges and incorporates by reference all paragraphs above as if fully set forth herein.

109.    Plaintiff and Class Members allege that Defendant's privacy policy forms a binding contract between Defendant and the Class Members when they gave their PII to Defendant.

110.    Defendant breached these provisions of the contracts in that it did not have any measures to stop accidental loss or alteration or unauthorized access to protect Plaintiff's and Class members' Personal Information, and did not limit access to that information to the specified individuals or entities. Defendant violated its commitment to maintain the confidentiality and

security of the PII of Plaintiff and the Class Members and failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security.

111.    The June 3, 2020 Data Breach, first disclosed to the Class Members on August 25, 2020, is a direct and legal cause of the injuries and damages suffered by Plaintiff and the Class Members.

112.    As a direct and proximate result of the Data Breach, Plaintiff and Class Members have been harmed and have suffered, and will continue to suffer, actual damages and injuries, including without limitation the release, disclosure, and publication of their PII, the loss of control of their PII, the imminent risk of suffering additional damages in the future, and out-of-pocket expenses.

113.    Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

**THIRD COUNT**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and Class Members against Defendant ArbiterSports,**
**or in the alternative, on behalf of Plaintiff and all Subclass Members against Defendant**
**ArbiterSports)**

114.    Plaintiff re-alleges and incorporates by reference all paragraphs above as if fully set forth herein.

115.    To the extent Defendant's privacy policy did not form an express contract, the course of conduct between and among Defendant and Class Members created implied contracts between Defendant and the Class Members.

116.    Defendant offered, solicited and invited Class Members to provide their PII as part of Defendant's regular business practices.

117.    Plaintiff and Class Members accepted Defendant's offers and provided their PII to Defendant.

118.    There was a meeting of the minds between the parties, and Defendant manifested its intent to enter into an implied contract that included a contractual obligation to reasonably protect Plaintiff's and Class Members' PII through, among other things, its Privacy Notice.

119.    In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations and were consistent with industry standards.

120.    Plaintiff and Class Members would not have entrusted their PII to Defendant in the absence of the implied contracts between them and Defendant to keep their information reasonably secure. Plaintiff and Class Members would not have entrusted their PII to Defendant in the absence of its implied promise to monitor its computer systems and networks to ensure that it adopted reasonable data security measures.

121.    Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendant.

122.    Defendant breached such implied contracts by failing to adhere to the terms of its privacy policy, violated its commitment to maintain the confidentiality of the PII of the Class Members and failed to comply with its own policies and applicable laws, regulations and industry standards relating to data security.

123.    As a direct and proximate result of the Data Breach, Plaintiff and Class Members have been harmed and have suffered, and will continue to suffer, actual damages and injuries, including without limitation the release, disclosure, and publication of their PII, the loss of control

of their PII, the imminent risk of suffering additional damages in the future, and out-of-pocket expenses.

124.    Had Defendant disclosed that its data security was inadequate or that it did not adhere to industry-standard security measures, neither the Plaintiff, the Class Members, nor any reasonable person would have turned over their PII to Defendant.

125.    Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

**FOURTH COUNT**
**Intrusion Upon Seclusion / Invasion of Privacy**
**((On behalf of Plaintiff and Class Members against Defendant ArbiterSports,**
**or in the alternative, on behalf of Plaintiff and all Subclass Members against Defendant**
**ArbiterSports)**

126.    Plaintiff repeats and re-alleges each and every allegation contained in all paragraphs above as if fully set forth herein.

127.    The Restatement (Second) of Torts states:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

Restatement (Second) of Torts § 652B (1977)

128.    Plaintiff and Class Members had a reasonable expectation of privacy in the PII Defendant mishandled. In failing to protect Plaintiff's and Class Members' PII, and in intentionally misusing and/or disclosing their PII, Defendant acted with intentional malice and oppression and in conscious disregard of Plaintiff's and Class Members' rights to have such information kept confidential and private. Plaintiff, therefore, seeks an award of damages on behalf of himself and the Class.

**FIFTH COUNT**
**Breach of Confidence**
**(On behalf of Plaintiff and Class Members against Defendant ArbiterSports, or in the alternative, on behalf of Plaintiff and all Subclass Members against Defendant ArbiterSports)**

129. Plaintiff re-alleges and incorporates by reference all paragraphs above as if fully set forth herein.

130. At all times during Plaintiff's and Class Members' interactions with Defendant, Defendant was fully aware of the confidential and sensitive nature of Plaintiff's and Class Members' PII that Plaintiff and Class Members provided to Defendant.

131. As alleged herein and above, Defendant's relationship with Plaintiff and Class Members was governed by terms and expectations that Plaintiff's and Class Members' PII would be collected, stored, maintained, and protected in confidence, and would not be disclosed the unauthorized third parties.

132. Plaintiff and Class Members provided their respective PII to Defendant with the explicit and implicit understandings that Defendant would protect and not permit the PII to be disseminated to any unauthorized parties.

133. Plaintiff and Class Members also provided their PII to Defendant with the explicit and implicit understandings that Defendant would take precautions to protect that PII from unauthorized disclosure, such as following basic principles of protecting its networks and data systems, including employees' email accounts.

134. Defendant voluntarily received in confidence Plaintiff's and Class Members' PII with the understanding that PII would not be disclosed or disseminated to the public or any unauthorized third parties.

135.     Due to Defendant's failure to prevent, detect, avoid the Data Breach from occurring by, *inter alia*, following best information security practices to secure Plaintiff's and Class Members' PII, Plaintiff's and Class Members' PII was disclosed and misappropriated to unauthorized third parties beyond Plaintiff's and Class Members' confidence, and without their express permission.

136.     As a direct and proximate cause of Defendant's actions and/or omissions, Plaintiff and Class Members have suffered damages.

137.     But for Defendant's disclosure of Plaintiff's and Class Members' PII in violation of the parties' understanding of confidence, their PII would not have been compromised, stolen, viewed, accessed, and used by unauthorized third parties. Defendant's Data Breach was the direct and legal cause of the theft of Plaintiff's and Class Members' PII, as well as the resulting damages.

138.     The injury and harm Plaintiff and Class Members suffered was the reasonably foreseeable result of Defendant's unauthorized disclosure of Plaintiff's and Class Members' PII. Defendant knew its computer systems and technologies for accepting and securing Plaintiff's and Class Members' PII had numerous security vulnerabilities.

139.     As a direct and proximate result of Defendant's breaches of confidence, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the compromise, publication, and/or theft of their PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their PII; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (v) the continued risk to their PII, which remains in

Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in its continued possession; (vi) future costs in terms of time, effort, and money that will be expended as result of the Data Breach for the remainder of the lives of Plaintiff and Class Members; and (vii) the diminished value of Defendant's services they received.

140.    As a direct and proximate result of Defendant's breaches of its duties, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, and other economic and non-economic losses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

a.    For an Order certifying this action as a class action and appointing Plaintiff and their counsel to represent the Class and Subclass;

b.    For equitable relief enjoining Defendant ArbiterSports from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' PII;

c.    For equitable relief compelling Defendant to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety, and to disclose with specificity the type of PII compromised during the Data Breach;

d.    Ordering Defendant to pay for not less than seven years of credit monitoring services for Plaintiff and the Class;

e.    For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

f.    For an award of punitive damages, as allowable by law;

g.    For an award of attorneys' fees and costs, and any other expense, including expert

witness fees;

h.    Pre- and post-judgment interest on any amounts awarded; and

i.    Such other and further relief as this court may deem just and proper.

**<u>JURY TRIAL DEMANDED</u>**

Plaintiff demands a trial by jury on all claims so triable.

Dated: October 1, 2020                                    Respectfully submitted,


                                                         /s/ *Gary M. Klinger*
                                                         Gary M. Klinger
                                                         **MASON LIETZ & KLINGER LLP**
                                                         227 W. Monroe Street, Suite 2100
                                                         Chicago, IL 60630
                                                         Tel.: (202) 429-2290
                                                         Email: gklinger@masonllp.com

                                                         James Felman*
                                                         Katherine Yanes*
                                                         **KYNES MARKMAN & FELMAN**
                                                         1000 South Ashley Drive, Suite 300
                                                         Tampa, FL 33602
                                                         Tel.: (813) 229-1118
                                                         Email: jfelman@kmf-law.com
                                                         Email: kyanes@kmf-law.com

                                                         Gary E. Mason*
                                                         David K. Lietz*
                                                         **MASON LIETZ & KLINGER LLP**
                                                         5101 Wisconsin Avenue NW, Suite 305
                                                         Washington, DC 20016
                                                         Tel.: (202) 429-2290
                                                         Email: gmason@masonllp.com
                                                         Email: dlietz@masonllp.com


*pro hac vice to be filed                                *Attorneys for Plaintiff*